**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-11191

LOUIS M. DYLL, JOYCE DYLL, EDWARD JAMES DYLL,
MICHAEL ANDREW DYLL, KATHERINE ROSE DYLL,

Plaintiffs - Appellees,

VERSUS

PAUL W. ADAMS, ET AL,

Defendants,

ROBERT B. MILLIGAN, JR., MONTAGUE AND COMPANY,

Defendants - Appellants.

----------------------------------

LOUIS M. DYLL,

Plaintiff-Appellee,

VERSUS

MONTAGUE AND COMPANY,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas
March 3, 1999

Before  SMITH, DUHÉ, and WIENER, Circuit Judges.

DUHÉ, Circuit Judge:

Robert Milligan and Montague & Company ("Appellants") appeal
from a judgment for actual damages, interest, punitive damages, and

a constructive trust against them.  For the following reasons, we affirm in part and reverse in part.

## BACKGROUND

This appeal involves a complex business transaction in which the Appellants agreed to market medical technology owned by the Plaintiff, Dr. Louis M. Dyll ("Dyll").[1]

Dyll owned a 51 percent interest in Texas Bio-Research Laboratories, Inc. ("TBRL"), a Texas corporation that held the patent rights to certain HIV detection technology ("Technology"). Kurt Osther ("Osther"), the designer of the Technology, held the remaining TBRL stock.  After several meetings with Dyll, the Defendants, Robert J. Milligan ("Milligan") and Paul Adams ("Adams"), developed a plan ("Plan") to market the Technology.[2] TBRL transferred the Technology to three unitrusts.  The unitrusts then transferred the Technology to Bio-Research Laboratories ("BRL"), a newly formed Delaware corporation, in exchange for a $10 million note ("Note") and a security interest in the Technology. Stock trusts created for Dyll and Osther owned BRL.  Milligan served as co-trustee of the stock trusts.

Of the three unitrusts, one named the Dyll family as income

---

[1]Dyll refers to Louis M. Dyll individually and, when the context is in reference to the plaintiffs, to Louis M. Dyll, Joyce Dyll, Edward James Dyll, Michael Andrew Dyll, and Katherine Rose Dyll, collectively.

[2]The term Defendants refers to Adams, Milligan, and Montague & Company.  The term Appellants refers only to Milligan and Montague & Company because Adams did not appeal.

beneficiaries, one named the Osther family as income beneficiaries, and one named BRL as the 20-year income beneficiary.  Adams served as trustee for all three unitrusts.

After the execution of the Note, the Defendants unsuccessfully attempted to market the Technology.   Then they sought to raise capital for BRL through debt or equity financing.  According to the Defendants, the Note was a major obstacle in their efforts to raise capital; therefore, Milligan asked Adams to cancel the Note based on failure of consideration.  Adams agreed to cancel the note and the security interest in exchange for a 2.5 percent royalty on all sales of the Technology's product.[3]

Dyll sued Milligan, Adams, and Montague & Company, claiming that they improperly canceled the Note and that their failure to immediately disclose the cancellation damaged him.[4]  Dyll's claims included fraud, negligent misrepresentation, gross negligence, breach of fiduciary duty, breach of contract, civil conspiracy, and violation of the Texas Deceptive Trade Practices Act ("DTPA").  The jury found in Dyll's favor on all liability theories. The district court's judgment awarded Dyll $4.2 million in actual damages, prejudgment interest compounded daily, $4.2 million in punitive damages against each of the three Defendants, post-judgment

---

[3]The Technology's product was a test for detecting the AIDS virus.

[4]Dyll alleges that Milligan and Adams acted individually and through their company, Montague and Company.

3

interest, court costs, and an equitable lien on the stock options and other interests in BRL (hereinafter "Verigen") held by Milligan and Montague & Company. Milligan and Montague & Company appeal.

## DISCUSSION

### I. Actual Damages

Texas law requires that damages be established with a reasonable degree of certainty. See Richter, S.A. v. Bank of America National Trust and Savings Association, 939 F.2d 1176, 1188 (5th Cir. 1991); Texas Instruments v. Teletron Energy Management, 877 S.W.2d 276, 278-79 (Tex. 1994). Although damages need not be established with mathematical precision, the evidence must provide a basis for reasonable inferences. See Richter, 939 F.2d at 1188. Further, there is a distinction between uncertainty about the fact of damages and uncertainty about the amount of damages. "Uncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as to the amount will not defeat recovery." McKnight v. Hill & Hill Exterminators, 689 S.W.2d 206, 207 (Tex. 1985) (quoting Southwest Battery Corp. v. Owen, 115 S.W.2d 1097, 1099 (Tex. 1938)). Thus, we review the evidence to determine whether a reasonable person could find that the damages were proven with a reasonable degree of certainty considering the evidence in the light most favorable to Dyll. See DSC Communications v. Next Level Communications, 107 F.3d 322, 329 (5th Cir. 1997).

The Appellants contend that Dyll's evidence of actual damages

4

is insufficient. In response, Dyll maintains that he was damaged by (1) the cancellation of the Note and (2) the nondisclosure of the Note's cancellation, which prevented him from recovering and marketing the Technology himself. There is no evidence that the Note's cancellation injured Dyll because he failed to prove that the Note was collectible. See Capital Title v. Mahone, 619 S.W.2d 204, 207 (Tex.Civ.App.--Houston [1st Dist.] 1981, no writ) (holding, in a suit against an escrow agent for failing to cash an earnest money check, that the plaintiff had to prove that the check was collectible); see also Federal Savings & Loan v. Texas Real Estate Counselors, 955 F.2d 261, 269 (5th Cir. 1992).

Dyll argues that the Appellants are estopped from asserting that the Note was worthless because they failed to return the technology to him. See Stokley v. Hanratty, 809 S.W.2d 924, 926-27 (Tex.App.--Houston [14th Dist.] 1991, no writ). Further, he claims that according to Windham v. Alexander, Weston, & Poehner, 887 S.W.2d 182, 184 (Tex.App.--Texarkana 1994, writ denied), a note is not worthless as long as anything of real value is exchanged for it. We are not persuaded by Dyll's argument. Stokley and Windham limit a notemaker's ability to avoid responsibility for a note by alleging failure of consideration. Stokley and Windham are inapplicable to this case because Dyll is not suing on the Note and the Appellants are not notemakers.[5]

_____

[5]Although the Appellants canceled the Note based on failure of consideration, they are not asserting the defense of failure of

Dyll also maintains that the Appellants' failure to disclose the Note's cancellation deprived him of the opportunity to recover the Technology and market it himself.  Dyll cites the following evidence as establishing the value of the Technology with reasonable certainty:  (1) the face value of the Note; (2) the Appellants' failure to return the Technology; (3) the Technology, together with other patented technology, was used as collateral for a $500,000 loan;[6] (4) Verigen's "boasts" to its shareholders about the progress on the Technology; (5) Verigen's estimates about the market for the Technology; (6) newspaper and journal articles indicating a desire for a product such as the Technology; and (7) Randal Laboratories' $200,000 payment to TBRL in 1987 for an option to purchase the Technology for $8.5 million.  Considering this evidence in the light most favorable to the verdict, we conclude that Dyll's evidence concerning the Technology's value is speculative at best and is, therefore, insufficient to prove lost profits.  See Teletron Energy Management, 877 S.W.2d at 279 (stating that "[p]rofits which are largely speculative, as from an activity dependent on uncertain or changing market conditions, or on chancy business opportunities, or on promotion of untested

consideration on appeal.

[6]Dyll's brief alleges that the Technology was used as collateral for a $3 million loan.  A careful review of the record proves otherwise.  The Technology, together with other patented technology, was used as security for a $500,000 loan.  Although the loan tends to establish the collective value of the collateral, it does not establish the value of the Technology by itself.

products or entry into unknown or unviable markets, or on the success of a new and unproven enterprise, cannot be recovered."); see also Richter, 939 F.2d at 1188 (stating that the plaintiff's belief that he could have sold his interest in a winery for $1.6 million was insufficient evidence of damages because there was no proof of an offer to purchase).

Dyll's reliance on our decision in DSC Communications v. Next Level Communications, 107 F.3d 322, 329-30 (5th Cir. 1997), is unavailing. In DSC, we stated that "[e]ven if a product is not fully developed, a plaintiff is not prevented from recovering future lost profits if it was hindered in developing that product, and the evidence shows the eventual completion and success of that product is probable." Id. at 329. Based on the plaintiff's history of producing successful telecommunications products, we held that the plaintiff established lost profits with reasonable certainty. See id. In contrast, Dyll has not demonstrated that he has a history of producing and marketing medical technology. Thus, unlike DSC, a reasonable jury could not find that it was probable that Dyll could have successfully marketed the Technology.

## II. Constructive Trust

"Actual fraud, as well as breach of a confidential relationship, justifies the imposition of a constructive trust." Meadows v. Bierchwale, 516 S.W.2d 125, 128 (Tex. 1974). A constructive trust is imposed because the person holding the title

to property would be unjustly enriched if he were allowed to retain it. See Omohundro v. Matthews, 341 S.W.2d 401, 405 (Tex. 1960). "[T]here is no unyielding formula to which a court of equity is bound in decreeing a constructive trust, since the equity of the transaction will shape the measure of the relief granted." Meadows, 516 S.W.2d at 131.

The Appellants maintain that the district court erred in imposing a constructive trust on their Verigen stock options because they did not obtain the options through their wrongful conduct. Noting that they received their initial options ("1988 Options") before the cancellation of the Note, they argue that they received the 1988 Options in exchange for their involvement in the Plan. Further, they insist that the options Milligan received in 1994 ("1994 Options") were authorized by Verigen's board of directors and, therefore, legitimate.

Although the Appellants did not acquire legal title to the 1988 Options improperly, they enhanced the value of the options by improperly canceling the Note and failing to notify Dyll of the cancellation. By their own admission, the Note prevented Verigen from raising the debt or equity financing it needed to survive. If we accept the Appellants' logic, the 1988 Options would have been worthless if they had not canceled the Note. Similarly, if Verigen had not survived, Milligan would not have received the 1994 Options. Thus, the jury did not err in finding that the Appellants were unjustly enriched by their improper conduct. Accordingly, we

8

affirm the imposition of the constructive trust with respect to both the 1988 and 1994 Options.

In a footnote, the Appellants contend that the judgment should be reformed to clarify that the constructive trust does not extend to stock or options held by Montague & Company as a trust agent for innocent third parties. We disagree. Under Texas law, courts may "impose[] a constructive trust on totally innocent beneficiaries of [a] wrongful act." Ginther v. Taub, 675 S.W.2d 724, 728 (Tex. 1984); Pope v. Garrett, 211 S.W.2d 559, 562 (Tex. 1948) (upholding a constructive trust on property that innocent beneficiaries inherited because of the wrongful acts of others). If the Appellants had not wrongfully canceled the Note, the stock and options that Montague & Company is allegedly holding for innocent third parties would be worthless. Because these third parties are beneficiaries of the Appellants' wrongful acts, the constructive trust was properly imposed.

## III. Punitive Damages

"Although Texas courts have allowed the award of exemplary damages in cases . . . where the only relief granted is equitable, they have required the plaintiff to prove that it has also suffered actual damages." 1488, Inc. v. Philsec Investment Corp., 939 F.2d 1281, 1291 n.4 (5th Cir. 1991). Without evidence of actual damages, our affirmance of the constructive trust will not support the award of punitive damages. Accordingly, we reverse the award

of punitive damages.

## CONCLUSION

We reverse and vacate the award of actual damages, punitive damages, and interest against Milligan and Montague & Company. We affirm the imposition of the constructive trust. The district court's judgment against Adams is unaffected because he did not appeal.

AFFIRMED in part; REVERSED and VACATED in part, and RENDERED.