SUN LIFE ASSURANCE COMPANY OF CANADA, Plaintiff/Interpleader,

v.

Gloria A. DUNN and Kelly M. Dunn (By Next Friend Marcia M. Dunn), Defendants.

No. CIV.A. H–00–245.

United States District Court, S.D. Texas, Houston Division.

March 15, 2001.

Craig Stephen Wolcott, Hays Mc Conn Rice & Pickering, Houston, TX, for Plaintiff.

Frank A. Hale, Attorney at Law, Houston, TX, for Gloria A. Dunn.

Cheri Duncan, Attorney at Law, Houston, TX, for Kelly M. Dunn and Marcia M. Dunn.

## ORDER

HITTNER, District Judge.

Pending before the Court is Defendant Kelly M. Dunn's Motion for Partial Summary Judgment. Having considered the motion, submissions, and application of law, the Court determines that the motion for partial summary judgment should be granted.

### I. *Background*

This is an interpleader action. Plaintiff Sun Life Assurance Company of Canada ("Sun") sued Defendants Kelly M. Dunn ("Kelly") and Gloria A. Dunn ("Gloria") to determine the recipient of the benefits in John F. Dunn's ("John") life insurance policy. Sun brings this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), § 1332 (diversity jurisdiction) and § 1335 (federal interpleader jurisdiction).

Defendant Marcia M. Dunn ("Marcia"), the mother and next friend of Kelly, divorced John on January 8, 1996. The final divorce decree named Marcia as sole managing conservator of Kelly and John as possessory conservator. The divorce decree also required that John pay child support in the amount of $1,028.00 per month. Kelly was found to require "substantial care and personal supervision" due to mental and physical disabilities; therefore, the divorce decree provided that John pay child support until Kelly's death or emancipation from her disabilities.[1]

In addition to the monthly child support payments, the divorce decree required John to supply several forms of "additional" child support. Specifically, John was required to maintain a life insurance policy of no less than $200,000.00, which designated Kelly as the irrevocable beneficiary and Marcia as the trustee. According to the divorce decree, the life insurance policy was to be carried as long as John was obliged to pay monthly child support.

The divorce decree further provided that John furnish Marcia with written proof of insurance by December 31 of each year to ensure that John provided the necessary life insurance coverage. John took out a series of insurance policies to comply with

---

1. Kelly was never declared legally incompetent. However, Kelly ratified Marcia's commencement of the present action as her next friend, allowing Marcia to prosecute and defend the action on Kelly's behalf.

the order. One such policy was for $160,-00.00 with Sun and was established on June 6, 1996, six months after the divorce. In addition to the Sun policy, John enrolled in a smaller policy with Business Men's Assurance Company of America ("BMA"). The BMA policy is worth between $40,000.00 and $60,000.00. John originally designated Kelly as the primary beneficiary of both policies. However, Kelly was never designated as an irrevocable beneficiary as required by the divorce decree.

On October 10, 1997, John changed the designated primary beneficiary of the Sun policy from Kelly to Gloria, in direct violation of the divorce decree. Kelly remained as a secondary beneficiary to the Sun policy and was entitled to thirty seven percent of the policy in the event of John's death. By decreasing Kelly's percentage on the Sun policy, the total value of the combined policies at this time fell well below the minimum total required by the divorce decree. John's actions went undetected because he changed Kelly's percentage back to the minimum requirement just prior to the December 31 reporting deadline, and then re-altered the percentages in violation of the divorce decree after copies had been furnished to Marcia.

This pattern of altering the primary beneficiary and the overall percentages of the policy continued until John's death on September 29, 1999. At that time, Kelly was designated to receive thirty seven percent of the Sun policy, totaling approximately $59,200.00. The total amount Kelly was to receive from the combined Sun and BMA policies was somewhere between $100,000.00 and $120,000.00, well below the $200,000.00 required by the divorce decree.

Sun filed the instant interpleader action against Kelly and Gloria to determine who should receive what percentage of John's life insurance policy. Sun was discharged from the suit on April 12, 2000, and Defendants were enjoined from taking action against Sun. Kelly filed her answer and cross-claim against Gloria on March 27, 2000, asking the Court to award her equitable title to the Sun policy by imposing an equitable trust on the proceeds. Kelly further argues theories of tortious interference with contract, fraud, conspiracy and breach of contract.

Gloria responded to Kelly's cross-claim on April 14, 2000, arguing that Kelly had failed to state a claim upon which relief could be granted. Additionally, Gloria cross-claimed against Kelly alleging tortious interference with contract. Kelly filed the instant motion for partial summary judgment, arguing that the divorce decree vested Kelly with an equitable interest in the Sun policy, therefore entitling her to the proceeds through a constructive trust. Kelly also seeks summary judgment on Gloria's tortious interference with contract claim.

## II. Summary Judgment Standard

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Initially, the movant bears the burden of demonstrating to the Court that there is an absence of a genuine issue of any material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the party who bears the burden of proof on the claims on which summary judgment is sought to present evidence beyond the pleadings to show there is a genuine issue for trial. *Id.* A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable,

or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. Kelly's Motion for Partial Summary Judgment

Kelly moves for partial summary judgment on the theory that the divorce decree between John and Marcia vested Kelly with an equitable interest in John's life insurance proceeds. Kelly argues that the Court should therefore impose a constructive trust on the proceeds of the Sun policy. She also argues that her claims are not barred by either the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), applicable state statutory law or current case law. Finally, Kelly argues that Gloria's tortious interference with contract claim has no merit because Kelly is seeking to recover property in which she has a vested interest.

### A. Applicable Law

■ Determining the proper beneficiary of an employee welfare insurance plan falls under the purview of ERISA.[2] *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1325 (5th Cir.1994). Federal courts must apply "federal common law to disputes between a non-beneficiary claimant and the named ERISA beneficiary to life insurance proceeds." *Manning v. Hayes*, 212 F.3d 866, 874 (5th Cir.2000). The court looks either to the statutory language of ERISA, or if that is not determinative, to the federal common law. *Brandon*, 18 F.3d at 1325. The federal common law in turn, may draw guidance from analogous state law. *Id.* Therefore, state and federal law are both applicable in determining the proper beneficiary of an insurance policy covered under ERISA. *Id.*

### B. Constructive Trust

Kelly first argues that she is entitled to the insurance proceeds based on a vested interest created through the divorce decree. She asks this Court to impose a constructive trust on the proceeds to ensure that she is not deprived of her interest. Gloria counters that in the cases cited by Kelly, the courts only imposed constructive trusts on insurance policies which were in existence *at the time of* or *before* the divorce decrees named the children as irrevocable beneficiaries. She notes that in the instant case, the Sun policy did not come into existence until well after the divorce decree and the imposition of a constructive trust is therefore improper. Kelly responds that a pre-existing policy is a common link, but not a determinative factor, in any of the cases she relies on. Therefore, she argues, that as long as the essential requirements for a constructive trust exist, this Court may impose such a trust.

■ For the Court to impose a constructive trust as an equitable remedy, Kelly must prove three elements:

1. breach of an informal relationship of special trust or confidence arising prior to and apart from the transaction in question, or actual fraud;

2. unjust enrichment of the wrongdoer; and

3. an identifiable res.

*Monnig's Dep't Stores Inc. v. Azad Oriental Rugs Inc.*, 929 F.2d 197, 201 (5th Cir. 1991) (noting that these factors are based on a combination of Texas state law as well as federal interpretation of Texas law). The Court will address each element in turn.

---

**2.** The parties agree that the Sun policy is a welfare benefit plan governed by ERISA.

### 1. Fiduciary Relationship

The critical inquiry in recognizing a constructive trust is whether the parties have a confidential or fiduciary relationship. *Harris v. Sentry Title Co.*, 727 F.2d 1368, 1370 (5th Cir.1984). In the absence of fraud, there must be a pre-existing confidential or fiduciary relationship between the parties. *Id.* Here, the parties had a pre-existing fiduciary relationship—that of father to daughter. *See S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex.1996). The divorce decree confirms this relationship, with John agreeing to provide child support for Kelly even after she reaches adulthood. Additionally, this relationship did not arise from the divorce decree. Rather, the fiduciary relationship arose out of the parent-child relationship. Kelly therefore has established the threshold requirement for the imposition of a constructive trust.

### 2. Unjust Enrichment

Under Texas law, a constructive trust can be imposed if the person holding title to property would be unjustly enriched if she were allowed to retain it. *Dyll v. Adams*, 167 F.3d 945, 948 (5th Cir.1999). When an insured agrees to irrevocably designate a certain beneficiary for valuable consideration, the designated beneficiary has a vested equitable interest in the proceeds of the insurance policy. *Box v. S. Farm Bureau Life Ins. Co.*, 526 S.W.2d 787, 789 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). Gloria argues that Kelly does not have the requisite equitable interest in the insurance proceeds because there was no valuable consideration given for the interest. In *Box*, the court established that a property settlement agreement naming the children as irrevocable beneficiaries is valuable consideration. *Id.* at 789. Based on the terms of the Dunn's divorce decree, which designates Kelly as the irrevocable beneficiary of at least $200,000.00 worth of life insurance coverage, Kelly has a vested equitable interest in the Sun policy.

To show that Gloria would be unjustly enriched, Kelly must therefore show that her vested interest would be frustrated by John's bad acts. *See Monnig's Dep't Stores*, 929 F.2d at 202 (requiring that there be a breach of the confidential or fiduciary relationship before a constructive trust will be imposed). In *Monnig's Dep't Stores*, the court found that the relationship between the parties met the relationship requirement for a constructive trust but never resulted in a breach of the confidential or fiduciary duty. *Id.* Conversely, in the instant case, John owed Kelly a fiduciary duty which was clearly breached by his wrongful conduct. Therefore, if Gloria were to receive the Sun insurance proceeds, she would benefit from John's bad acts. In other words, Gloria would be unjustly enriched if Kelly were deprived of her vested interest in the insurance proceeds.

Additionally, a court may impose a constructive trust on totally innocent beneficiaries of a wrongful act. *Dyll*, 167 F.3d at 948. If a non-designated beneficiary can show that a designated beneficiary would be unjustly enriched because of a wrongful act, the non-designated beneficiary is entitled to the imposition of a constructive trust on the proceeds. *Id.* Accordingly, Gloria, regardless of whether she is an innocent party, would be unjustly enriched if she were to receive Kelly's interest in the insurance policy proceeds.

### 3. Traceable Res

The final condition Kelly must meet before an equitable trust can be imposed is a traceable res. The divorce decree grants Kelly a legal interest in the insurance policy proceeds. *Roberts v. Roberts*, 560 S.W.2d 438, 439 (Tex.Civ. App.—Beaumont 1977, wit ref'd n.r.e.)

(holding that an irrevocable beneficiary to an insurance policy holds legal title to the policy proceeds). The policy proceeds are a property interest, and are therefore sufficient to satisfy the traceable res requirement for a constructive trust.

 Accordingly, Kelly has established all three elements required for the imposition of a constructive trust. The Court must therefore determine if Gloria has established any defenses.

## C. Defenses to Constructive Trust Claims

Gloria offers three defenses to the imposition of a constructive trust. The Court will address each in turn.

### 1. Pre-existing Policy

 Gloria first argues that a constructive trust cannot be imposed unless the insurance policy at issue existed before the signing of the divorce decree. Gloria claims that the Sun insurance policy in the instant case did not exist until six months after the divorce decree, thereby precluding the imposition of a constructive trust. However, Gloria does not cite to a single case which requires that an insurance policy pre-exist a divorce decree in order for a court to impose a constructive trust. In fact, the *Monnig's Dep't Stores* court stressed that the *duty* must pre-exist the divorce decree, not the insurance policy. *Monnig's Dep't Stores*, 929 F.2d at 202. The fact that the insurance policy did not pre-exist the divorce decree therefore does not preclude the imposition of a constructive trust in the instant case.

### 2. Contract v. Equity

 Gloria next argues that Kelly's claim actually stands in contract, and is therefore barred by section 153.007(c) of the Texas Family Code. Section 153.007(c) provides that the "[t]erms of the [divorce decree] ... may be enforced by all remedies available for enforcement of judg-ment, including contempt, but are not enforceable as a contract." Tex. Fam. Code Ann. § 153.007(c) (Vernon 1999). Gloria's argument misconstrues the facial presentation of Kelly's arguments. Under both federal and Texas law, the imposition of a constructive trust is an equitable remedy. *See Dyll*, 167 F.3d at 948 (adopting *Meadows v. Bierschwale*, 516 S.W.2d 125, 128 (Tex.1974)). The imposition of a constructive trust is justified when there has been a fraud or a breach of a confidential relationship. *Id.* Kelly's claim is therefore based on well-founded equitable principles of unjust enrichment. Accordingly, she is not precluded from asserting her claim simply because it may seem to sound in contract.

### 3. ERISA and Texas Insurance Code § 21.22

 Gloria's "Supplemental Response to Marcia's Motion for Summary Judgment and Response to the Reply of Marcia" presents a new legal argument based on section 21.22 of the Texas Insurance Code. Under the Federal Rules of Civil Procedure and Local Rule 7 of the United States District Court for the Southern District of Texas, the Court is only required to accept and address claims made in an original motion, a response to an original motion or an authorized supplemental or amended motion. The Court is therefore under no obligation to address a claim made in a supplemental response to a reply. However, in the interest of justice and equity, and in an abundance of caution, this Court will address Gloria's claim based on section 21.22.

 Both parties agree that life insurance policy proceeds are considered welfare benefits under ERISA. *See* 29 U.S.C. § 1002(2) (1994). Welfare benefits, as opposed to pension benefits, are not covered by ERISA's anti-alienation clause,

29 U.S.C. § 1056(d)(1). Welfare benefits can therefore be freely assigned and alienated. *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). Further, the United States Supreme Court has stated that "when Congress was adopting ERISA, it had before it a provision to bar the alienation or garnishment of ERISA plan benefits, and chose to impose that limitation only with respect to ERISA pension benefits plans, and not ERISA welfare benefit plans. In a comprehensive regulatory scheme like ERISA, such omissions are significant ones." *Id.* There is therefore a presumption in favor of free alienation of ERISA welfare benefits.

▮ Gloria argues that section 21.22 provides an anti-alienation provision applicable to insurance proceeds not provided for by ERISA. Specifically, section 21.22 provides:

> Notwithstanding any provision of this code other than this article, all money or benefits of any kind, including policy proceeds and cash values, to be paid or rendered to the insured or any beneficiary under any policy of insurance or annuity contract issued by a life, health or accident insurance company, including mutual and fraternal insurance, or under any plan or program of annuities and benefits in use by any employer or individual, shall: ... (3) be fully exempt from being seized, taken or appropriated or applied by any legal or equitable process or operation of law to pay any debt or liability of the insured or of any beneficiary, either before or after said money or benefits is or are paid or rendered;

TEX INS. CODE ANN. § 21.22 sec. 1(3) (Vernon 1999). Further, ERISA is to be interpreted in accordance with applicable state law as guidance for the federal common law. *Brandon*, 18 F.3d at 1325. Based on these basic principles of statutory inter-

pretation, Gloria argues that the anti-alienation provision provided for in section 21.22 should be grafted into ERISA.

▮ Controlling Texas case law, however, establishes that section 21.22 does not apply when used as a shield to fraud. *Marineau v. Gen. Am. Life Ins. Co.*, 898 S.W.2d 397, 402 (Tex.App.—Fort Worth 1995, no writ). In *Marineau*, the court addressed whether an insurance policy that had been purchased with embezzled funds could be placed in constructive trust. *Id.* The court held that section 21.22 was not a bar to the imposition of a constructive trust because the insurance policy was obtained through fraudulent methods. *Id.* The court further held that the central question concerned the ownership of the policy. *Id.* The court allowed the imposition of a constructive trust despite section 21.22 because the victims of the embezzlement had an ownership interest in the portion of the policy purchased with embezzled funds. *Id.* Therefore, Texas law precludes the application of section 21.22 to shield wrongful acts when doing so would deprive the rightful owner of her property. *Id.*

▮ As discussed *supra*, Kelly has a vested equitable interest in the Sun life insurance proceeds. Additionally, it is undisputed that Kelly was deprived of her full interest in the Sun policy proceeds because of John's fraudulent conduct in violation of the divorce decree. Gloria therefore cannot use section 21.22 as a shield to John's fraud.

▮ Moreover, several Texas courts have noted that section 21.22 is not a total bar to all claims on insurance policy proceeds. Rather, the statute primarily serves to protect beneficiaries and policy proceeds from the actions of *creditors*. *Marineau*, 898 S.W.2d at 402; *see also Aetna Life Ins. Co. v. Creel*, 390 S.W.2d

522, 524 (Tex.Civ.App.—Houston 1965, writ ref'd) (stating that section 21.22 does not in any way prevent a district court in a divorce suit from decreeing and ordering a division of the estate of the parties). Section 21.22 is therefore not a defense to the imposition of a constructive trust in the instant case.

### D. Excess Coverage

 Kelly seeks to have this Court impose a constructive trust on the entire amount of the Sun policy in the event that she should prevail on her motion. However, Kelly is entitled only to the amount of the policy in which she has a vested equitable interest. According to the divorce decree, which is the basis of Kelly's interest, she is entitled to a minimum of $200,000.00. John's wrongful actions clearly demonstrate his intent to leave Kelly with the minimum possible amount of coverage pursuant to the divorce decree. Kelly therefore has a vested interest in exactly $200,000.00.

Gloria and Kelly argue whether the $200,000.00 figure should be offset by the amount paid to Kelly from the BMA policy. Gloria contends that Kelly's interest in the BMA policy is $60,000.00. Kelly states that the BMA policy is worth $40,200.00. Although the parties disagree whether the distribution of the Sun policy, coupled with the distribution of the BMA policy, may result in Kelly receiving excess coverage, the BMA policy is not before this Court. Therefore, the Court will not consider the ramifications of the distribution of the BMA policy as it relates to the overall amount of the Sun policy placed in constructive trust.

### E. Tortious Interference with Contract

 Finally, Kelly seeks summary judgment on Gloria's tortious interference with contract cross-claim.[3] Under Texas law, a claimant must prove four elements to establish tortious interference with contract:

1. the existence of a contract subject to interference;
2. a willful and intentional act of interference;
3. that such act was a proximate cause of damage; and
4. that actual damage has occurred.

*Thrift v. Hubbard,* 44 F.3d 348, 356 (5th Cir.1995). Also, as an affirmative defense, Kelly can negate any potential liability on the ground that her conduct was privileged or justified. *Prudential Ins. Co. of America v. Financial Review Servs., Inc.,* 29 S.W.3d 74, 80 (Tex.2000). The justification defense can be based on "either one's own legal rights or a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken." *Texas Beef Cattle Co. v. Green,* 921 S.W.2d 203, 211 (Tex.1996). Gloria's claim is based on the theory that Kelly lacks any colorable legal right to the Sun policy. However, as discussed supra, Kelly has a vested equitable interest in the Sun policy. Kelly has therefore established the affirmative defense of justification as a matter of law and summary judgment is appropriate on this claim. Accordingly, the Court hereby

ORDERS that Defendant Kelly Dunn's Motion for Partial Summary Judgment is GRANTED. The proceeds of the Sun Life Assurance Company of Canada policy are subject to a constructive trust where

---

**3.** The Court notes that both parties have filed tortious interference with contract cross-claims against each other. Presently, Kelly has moved for summary judgment on Gloria's cross-claim. However, neither party has moved for summary judgment regarding Kelly's cross-claim against Gloria.

Kelly M. Dunn is the beneficiary. The funds currently being held in the Court's registry, in the amount of $160,000.00 plus accrued interest, shall be distributed in the form of a check made out to Marcia Dunn for the use and benefit of Kelly M. Dunn. The Court further

ORDERS that Defendant Gloria A. Dunn's tortious interference with contract cross-claim is DISMISSED.