# United States Court of Appeals for the Federal Circuit

04-1208, -1271

LARRY G. JUNKER,

Plaintiff-Cross Appellant,

v.

JAMES R. EDDINGS, GALT MEDICAL CORP.
and XENTEK MEDICAL, INC.,

Defendants-Appellants.

Robert M. Mason, Mason & Petruzzi, of Dallas, Texas, argued for plaintiff-cross appellant. With him on the brief was James D. Petruzzi.

Jerry R. Selinger, Jenkens & Gilchrist, of Dallas, Texas, argued for defendants-appellants. With him on the brief was Timothy G. Ackermann.

Appealed from: United States District Court for the Northern District of Texas

Judge Barbara M.G. Lynn

# United States Court of Appeals for the Federal Circuit

04-1208, -1271

LARRY G. JUNKER,

Plaintiff-Cross Appellant,

v.

JAMES R. EDDINGS, GALT MEDICAL CORP.,
and XENTEK MEDICAL INC.,

Defendants-Appellants.

_____

DECIDED:  February 8, 2005

_____

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and BRYSON, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

In this design patent infringement case, the jury, answering interrogatories, found that the patent was valid and willfully infringed, and awarded damages of $813,550 for the infringement, but denied damages for breach of a non-disclosure agreement.  The district court denied judgment as a matter of law for the defendants, refused to establish a constructive trust for the patentee's benefit, and awarded the patentee attorney fees.  Junker v. Eddings, No. 3:02-CV-0172-M (N.D. Tex. Jan. 16, 2004) ("Amended Judgment").  We affirm all of those actions, except the attorney fee award, which we vacate and remand for further proceedings.

I

The basic facts are largely undisputed. Larry G. Junker was an inventor and a salesman of medical devices. Beginning in 1998, the appellant Galt Medical Corporation's president, James R. Eddings, met and communicated with Junker to develop and market an introducer sheath for medical insertion of catheters. At their first meeting in August 1998, Junker and Eddings each signed a non-disclosure agreement. Junker then showed Eddings a prototype design for an introducer sheath that Junker had developed, which included larger handles so that doctors could more easily grip the sheath.

Junker suggested to Eddings by fax in December 1998 that the handle of the sheath be made "larger (wider)" and attached a hand-drawn sketch showing a propeller-shaped design. The appellants (collectively, "Galt") subsequently revised the handle design of the Galt introducer sheath in development so that it appeared similar to Junker's sketch. During 1999, Galt gave Junker copies of its prototypes and final production drawings to aid in his sales and marketing efforts.

On January 13, 2000, Galt filed a patent application for the introducer sheath, naming Richard Gillespie, a developer it had hired, as the inventor. Galt's utility patent, U.S. Patent No. 6,336,914 (issued Jan. 8, 2002) (the "'914 patent") eventually issued from this application.

Shortly after learning about Galt's application, Junker filed his own design patent application on February 7, 2000, using the same production drawings that Galt had filed as part of its '914 patent application. The patent in suit, U.S. Patent No. D 450,839 (issued Nov. 20, 2001) (the "D'839 patent"), issued to Junker from this application. The

sole claim of the D'839 patent reads as follows: "The ornamental design for a handle for introducer sheath, as shown and described[,]" followed by figures taken from Galt's drawings. D'839 patent, 1-4.

Following a business disagreement, Junker sued Galt in the United States District Court for the Northern District of Texas. Junker alleged infringement of the D'839 patent, as well as state law claims including breach of contract based on Galt's violation of the 1998 non-disclosure agreement. In response, Galt asserted that the D'839 patent was invalid under several provisions of 35 U.S.C. § 102 because Junker was not the first to invent the claimed design. Junker v. Eddings, No. 3:02-CV-0172-M (N.D. Tex. Dec. 5, 2003) (joint pretrial order).

From the start of the litigation, Junker contended that the scope of his D'839 patent claim was limited to a single ornamental feature of the introducer sheath, namely, the enlarged, rounded, "Mickey Mouse ear" shaped handle. In keeping with this argument, at trial Junker only presented evidence relating to this single feature, which he contended that he had invented prior to the '914 patent application, based on evidence including his December 1998 fax to Eddings. Galt argued that the D'839 patent claimed numerous additional features that Junker did not invent. Galt also moved unsuccessfully for partial summary judgment under 35 U.S.C. § 171 on the ground that the D'839 design was functional rather than ornamental. The claim of the D'839 patent was never judicially construed, and Galt never requested that such a construction be done.

Before the case was submitted to the jury, Galt moved for judgment as a matter of law (JMOL) pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. Galt

04-1208, -1271                    3

contended that the claim of the D'839 patent was invalid under 35 U.S.C. § 102(e) based on the earlier filing date of the '914 patent, or alternatively under 35 U.S.C. § 102(f) and/or § 102(g)(2). The trial court denied Galt's motion without prejudice to its renewal.

Without objection, the court gave the jury a single question covering all of Galt's section 102 defenses:

> 7. Do you find from clear and convincing evidence that plaintiff was not the first inventor of the design described in the '839 patent?

The court also gave the following jury instruction without objection:

> . . . [Y]ou are instructed that plaintiff was not the first inventor if you find from clear and convincing evidence that the ornamental features claimed in the '839 patent were known and used, or made and not abandoned or suppressed, by persons other than Plaintiff before the date of Plaintiff's invention. Answer "Yes" or "No".

(J.A. at 21, 1011.) The jury answered question 7 "No." (J.A. at 21, 1022.)

The jury found that Junker had sustained $813,550 in damages due to Galt's infringement of his D'839 patent, and the court awarded Junker this amount at final judgment. Am. J. at ¶ 5. The jury also found that Galt had breached the August 1998 non-disclosure agreement, but that the breach had not caused Junker any damages. Post-verdict, Galt renewed its motion for JMOL that the D'839 patent was invalid in accordance with Rule 50(b), and the court again denied it.

The district court also awarded Junker attorney fees of $275,000 under 35 U.S.C. § 285. Am. J. at ¶ 9. According to Junker's attorney, the actual fees Junker had incurred were $126,712.50. (J.A. at 1054.) The court gave no justification for or

explanation of the basis for the increased amount. Galt's appeal challenges the validity rulings and the amount of the attorney fee award.

Based on the jury's findings that Galt had breached the 1998 non-disclosure agreement, but that the breach had not caused Junker any damages, Junker asked the district court to impose a constructive trust on Galt's '914 patent as a remedy for Galt's breach. The court denied the request, stating that "because the jury awarded no damages, Plaintiff is not entitled to any relief for Defendant's breach." Id. at ¶ 10. Junker has cross-appealed the denial of a constructive trust and the failure to award breach-of-contract damages.

II

Galt first argues that the D'839 patent is invalid under 35 U.S.C. §§ 102(e), 102(f) and/or 102(g)(2) because Junker was not the first to invent the ornamental design features shown in the patent, and that the district court therefore erred in denying Galt's motions for JMOL. Galt contends that because the D'839 patent includes ornamental features such as upswept handles and distal rounded side edges in addition to the enlarged "Mickey Mouse ear" shaped handle, no reasonable jury could have concluded that Junker was first to invent the design claimed in the patent. Implicit in this contention is the assumption that Galt, in its Rule 50 motions for JMOL, adequately challenged the sufficiency of the evidence supporting Junker's infringement claim. We agree with Junker, however, that Galt's JMOL motions did not adequately raise the issue, and that Galt therefore cannot now press the contention.

Galt filed two motions for JMOL based on the alleged insufficiency of the evidence to support Junker's infringement claim, both of which involved the scope and

meaning of the D'839 patent. Galt filed the first motion under Rule 50(a) of the Federal Rules of Civil Procedure after the trial had been completed, but before the case was submitted to the jury. It was an oral motion that raised a number of issues. With respect to the question here at issue, Galt alleged that "[t]here is no evidence presented by the plaintiff that corroborates Mr. Junker's claim to have invented the design shown and claimed in this patent before January 13, 2000 or any other prior time," and that "there is no corroboration from his oral testimony that he was the inventor of the design claimed in the '839 patent prior to the date stated." Galt referred several times to the "design claimed in the patent" or "the design." The district court denied the motion from the bench without explanation and "without prejudice to the issue being raised . . . post verdict." (J.A. at 1005-06.)

After the jury upheld the validity of the D'839 patent, Galt moved for JMOL that the patent was invalid because there was no evidence that Junker had conceived "<u>each element or feature</u> of the design claimed in his '839 patent prior to the filing date of that patent or that of [Galt's] '914 patent." (J.A. at 1028 (emphasis in original).) Galt further argued that "the Plaintiff must have shown that at the time of his conception, he could have described his invention <u>as claimed in the drawings</u> (that is, <u>every feature</u> in the drawings) of the '839 patent," (J.A. at 1030 (emphases in original)), and that

> There is no <u>corroborating</u> evidence whatsoever of such a conception by Plaintiff of <u>every feature</u> in the '839 patent prior to the date he filed his application, or prior to any other date he could have claimed as his date of invention. He only produced some evidence of a racetrack shaped handle model and a later one-dimensional view in a fax of a hand-drawn propeller shape. He introduced no corroborating evidence of his conception of the complex handle curving through three-dimensional space, with it [sic] many surface features, that appears in the '839 patent drawings (which he

04-1208, -1271                                6

> admits he did not draw but obtained from Defendants). This is not clear and convincing evidence of his conception of every feature claimed in all the drawings of the '839 patent and therefore is legally insufficient to support a finding that he was the prior inventor before the '914 filing date or the '839 filing date.

(J.A. at 1031 (emphases in original).)

Rule 50(a) provides that a motion for JMOL made before the case is submitted to the jury "shall specify . . . the facts on which the moving party is entitled to the judgment." Fed. R. Civ. P. 50(a)(2). Therefore, Galt's Rule 50(a) oral motion had to be sufficiently specific regarding its factual basis to inform Junker of exactly what Galt alleged to be deficient in Junker's evidence, thus giving Junker an opportunity to cure the defects in proof. See Gaus v. Conair Corp., 363 F.3d 1284, 1287 (Fed. Cir. 2004); Duro-Last, Inc. v. Custom Seal, Inc., 321 F.3d 1098, 1106 (Fed. Cir. 2003). The specificity requirement serves the further important purpose of informing the trial court of the precise issues it must decide in ruling on the motion. See, e.g., Gordon v. County of Rockland, 110 F.3d 886, 887 (2d Cir. 1997); Clark v. Cent. States Dredging Co., 430 F.2d 63, 65 (8th Cir. 1970); see also 9 James W. Moore et al., Moore's Fed. Practice ¶ 50.02[3] (3d ed. 1997). The issue here "pertains uniquely to patent law" in that it concerns specific features of a design patent and therefore, we review the district court's determination under Federal Circuit law. Duro-Last, 321 F.3d at 1106.

Galt's original JMOL motion referred to the subject matter claimed in the D'839 patent in general terms, such as the "design claimed in the patent." At trial, Junker only introduced evidence on the sole ornamental feature that he claimed to have invented, the enlarged "Mickey Mouse ear" shape of the handle. Galt's present argument of invalidity, however, is based upon specific additional features of the design, such as its

upswept appearance and rounded side edges, which Galt now contends are ornamental. We do not think that the general statements in Galt's original JMOL motion were adequate to inform either Junker or the district court that Galt's challenges to the validity of the D'839 patent involved these specific elements of the design.

To be sure, "courts may excuse a party's failure to comply with the technical requirements of Rule 50 if the party clearly challenged the sufficiency of the evidence on the disputed issue at some point during trial, thereby alerting the opposing party as to the grounds on which the evidence is allegedly insufficient." Duro-Last, 321 F.3d at 1106; cf. Gaus, 363 F.3d at 1287-88 (party had notice of claim construction issue on appeal where opponent had made similar argument before trial). But this case involves not just a mere "technical" failure to comply. Although Junker repeatedly contended that the only ornamental feature his patent disclosed was the enlarged rounded handle, Galt never offered evidence at trial relating to specific additional ornamental features claimed in the D'839 patent as the basis for invalidating it. While Galt presented some evidence relating to various features of the introducer sheath, these features were not definitively categorized as ornamental or functional. For example, evidence regarding the rounded edges, which Galt now contends are ornamental features, suggests that these edges had the functional purpose of preventing surgical gloves from snagging.

Although Galt's post-verdict motion was somewhat more specific, it too was not sufficiently detailed in describing the facts and ornamental features upon which Galt based its claim of invalidity. In any event, Galt's Rule 50(b) motion came too late, after the jury had already upheld the design patent's validity based upon the only specific ornamental design element that Junker's evidence had addressed. See Duro-Last, 321

F.3d at 1107 (stating that it is "constitutionally impermissible" under Seventh Amendment for district court to enter post-verdict JMOL on grounds not sufficiently raised in pre-verdict JMOL motion).

Galt contends, however, that because (1) only the solid line, and not the dotted line, portions of design patent diagrams define the claimed ornamental features of the design and (2) the additional design elements upon which it relies are depicted in solid lines, the references in its motions to the "design" shown in the patent sufficiently indicated that it was relying upon all the design elements shown in solid lines, and not just the element (the enlarged "Mickey Mouse ear" handle) clearly addressed by the evidence. Assuming without deciding that Galt correctly states the rule governing solid and dotted lines as defining the claims in design patents, that argument does not sustain its position. That principle, usually applied in construing the claims of a design patent, may be useful in determining what the claims of the design patent cover. See Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1378 (Fed. Cir. 2002); Door-Master Corp. v. Yorktowne, Inc., 256 F.3d 1308, 1312-13 (Fed. Cir. 2001). The issue in this case, however, is not what the D'839 design patent claim means, but which elements of that claim Galt asserted in its JMOL motions as a basis for its invalidity assertion.

What remains on this issue, therefore, is to determine the evidentiary support for the jury's verdict of patent validity based on the only ornamental feature of the D'839 patent that the trial evidence addressed — the enlarged "Mickey Mouse ear" shaped handle. This court will reverse a denial of JMOL only "if the jury's factual findings are not supported by substantial evidence or if the legal conclusions implied from the jury's

verdict cannot in law be supported by those findings." Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). "Where, as here, a jury finds a patent valid, this court will not disturb that finding unless reasonable jurors could not have reached that verdict." Door-Master, 256 F.3d at 1312 (citing Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 893 (Fed. Cir. 1984)).

In this case, the evidence before the jury on the validity issue included Junker's message and sketch suggesting to Eddings "larger (wider)" handles, which occurred well before Galt's '914 patent application. That evidence supports the jury's finding that there was not clear and convincing evidence that Junker was not the first to invent the enlarged "Mickey Mouse ear" shaped handle design claimed in the D'839 patent. We affirm the district court's denial of Galt's motion for JMOL.

III

Section 285 of Title 35 of the United States Code provides that "in exceptional [patent] cases" the court may award "reasonable attorney fees" to the prevailing party. In this case, the attorney fees Junker actually incurred totaled $126,712.50. The district court awarded Junker $275,000 as a reasonable attorney fee, without any explanation for more than doubling Junker's actual fees and without stating the basis upon which the court concluded that the higher fee was "reasonable." On the record before us, we cannot sustain the $275,000 fee award because we do not know the basis for it and therefore cannot determine whether it is reasonable. We therefore vacate the award of that fee, and remand the issue to the district court for reconsideration and explanation of the basis upon which the court determines that whatever fee it awards is reasonable.

Galt does not question either the jury's finding that its infringement was willful, or the district court's finding that the case was exceptional. Its sole challenge to the attorney fee award is that the amount was excessive.

Galt contends that any award more than the amount the client actually paid the attorney would not be reasonable. Galt relies upon this court's statements in Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1578 (Fed. Cir. 1983), that "[t]he purpose of § 285 is . . . to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit[,]" and that "attorney fees . . . include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." Although the amount the client paid the attorney is one factor for the court to consider in determining a reasonable fee, it does not establish an absolute ceiling. The determination of a reasonable attorney fee requires the court to consider all the relevant circumstances in a particular case, and we review that determination for abuse of discretion. Pharmacia & Upjohn Co. v. Mylan Pharms., Inc., 182 F.3d 1356, 1359 (Fed. Cir. 1999); Water Techs. Corp. v. Calco, Ltd., 850 F.2d 660, 674 (Fed. Cir. 1988).

Before the district court, Galt stipulated that the $126,712.50 fee, "which is the actual billing rate on 470 hours," was "a reasonable basis," and "a reasonable fee." However, Junker's lawyer stated that "some enhancement" of the fee "is appropriate for two reasons" – the case presented "quite a few issues in trial" and "the result is nothing short of extraordinary in terms of the jury verdict, damage, and willfulness finding." The lawyer also referred to "the low hourly rate that is being charged in this case, which I believe is well below patent counsel of our experience level in this area." He suggested

that "the lodestar amount should be something more akin to the 470 hours that we actually billed, times a more reasonable hourly rate. I think that number, which would be something on the order of 470 hours at $350 an hour is $164,500." Finally, the lawyer stated that "in a patent case with less than a million at stake, fees in the Texas area [are] about $500,000, and we discounted that based on the assumption, which we think is reasonable, that 20 percent of those costs would be things like experts, appeal, et cetera. So that's the basis for our number."

Conspicuously absent from this record is the kind of evidence usually analyzed in determining a reasonable attorney fee: hourly time records, full expense statements, documentation of attorney hourly billing rates in the community for the particular type of work involved, the attorney's particular skills and experience, and detailed billing records or client's actual bills showing tasks performed in connection with the litigation. See Water Techs., 850 F.2d at 674; Central Soya, 723 F.2d at 1578; Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1069 (Fed Cir. 1983).

Our review of the award is made even more difficult by the lack of any explanation by the district court of the factual and legal bases upon it which more than doubled the original attorney fee charged Junker of $126,712.50 to $275,000. The latter figure first appeared in the district court's final judgment, which merely stated: "Plaintiff is awarded reasonable and necessary attorneys' fees under 35 U.S.C. § 285 in the amount of $275,000.00." Am. J. at ¶ 9. Indeed, although at the hearing before the district court the attorney suggested that an appropriate fee would be $164,500, the court gave no reason why it added more than $100,000 to that figure.

As in Water Technologies, "we are unable to find sufficient support in the record to perform a meaningful review of the reasonableness of the attorney fees award." 850 F.2d at 674. Accordingly, as in that case, we vacate the award of attorney fees and remand to the district court for further proceedings. In so doing, we intimate no view on what would be a reasonable attorney fee, in this case — a determination that lies primarily within the discretion of the district court. We assume that the district court will fully explain the basis for any subsequent award of attorney fees it may make.

IV

In his cross appeal, Junker challenges the lack of relief for the breach of the non-disclosure agreement that the jury found. He contends (A) that the district court erred in not imposing a constructive trust upon Galt's '914 utility patent for Junker's benefit; and (B) that he should have been awarded damages for Galt's breach.

A. The district court stated the theory upon which Junker sought a constructive trust: "It's my understanding the claim to the '914 patent is based on an alleged breach of the confidentiality or nondisclosures agreement, and [Junker is] claiming that because [Galt] used the information that [Galt] got from Mr. Junker in obtaining the '914, that's why we have two questions, that the remedy for that would be that [Junker] get the patent."

Because a constructive trust is a creature of state law, we look to that law to determine the requirements for and limits of that concept. Under the law of Texas (the state in which the defendants reside and in which the non-disclosure agreement was signed), a constructive trust is an equitable remedy for situations where a person holding title to property would be unjustly enriched if he were allowed to retain it. See,

e.g., Dyll v. Adams, 167 F.3d 945, 948 (5th Cir. 1999) (citing Omohundro v. Matthews, 341 S.W.2d 401, 405 (Tex. 1960)). "[T]here is no unyielding formula to which a court of equity is bound in decreeing a constructive trust, since the equity of the transaction will shape the measure of relief granted." Meadows v. Bierschwale, 516 S.W.2d 125, 131 (Tex. 1974), cited and quoted in Dyll, 167 F.3d at 948. Since a district court has discretion whether to impose a constructive trust pursuant to its equitable powers, we review for abuse of discretion. United States v. Durham, 86 F.3d 70, 72 (5th Cir. 1996).

Texas permits a constructive trust to be imposed if there is either "(1) breach of an informal relationship of special trust or confidence arising prior to the transaction in question, or (2) actual fraud." Gruber v. Deuschle, 261 F. Supp. 2d 682, 696 (N.D. Tex. 2003); see Meadows v. Bierschwale, 516 S.W.2d 125, 128 (Tex. 1974). Junker failed to meet either of these requirements, and therefore, the district court did not abuse its discretion in refusing to impose a constructive trust.

Although Junker now argues that a confidential relationship between Junker and Galt "existed long before and without relation to Galt's receipt of a patent," (Appellee's Br. at 20), prior to trial Junker, in his brief in support of his motion for partial summary judgment, stated: "Defendants cannot show as a matter of law that the parties had a long standing fiduciary relationship necessary to impose a constructive trust. The opposite in fact is true that there was no confidential relationship in which Junker owed a duty to Defendants." Contrary to Junker's contention, the jury had not "found that a confidential relationship existed between Junker and Defendant Galt and that the confidential relationship was breached," id.; the jury found only that Galt "breached the non-disclosure agreement between [Junker] and Galt executed in August 1998[,]" as

worded in jury question 1. "The fact that people have had prior dealings with each other and that one party subjectively trusts the other does not establish a confidential relationship." Consol. Gas & Equip. Co. of Am. v. Thompson, 405 S.W.2d 333, 336 (Tex. 1966).

With respect to the requirement of "actual fraud," Junker argues only that Galt's breach of the non-disclosure agreement constituted a "constructive fraud." (Cross Appellant's Reply Br. at 1.) The Texas Supreme Court has recognized, however, that for purposes of imposing a constructive trust, "mere breach of contract is not fraud" and "it may not be evidence of fraud." Thigpen v. Locke, 363 S.W.2d 247, 252 (Tex. 1962). The record shows no actual fraud that would justify a constructive trust.

B. Junker's argument that having found a breach of the non-disclosure agreement, the jury was required to award him damages, and that the jury's failure to do so is "against the clear weight of the evidence," (Appellee's Br. at 21), fares no better.

He seeks breach of contract damages of $813,550, which allegedly equals Galt's gross sales of the product incorporating Junker's confidential information. Although he frames his argument in terms of a lack of evidentiary support for the jury's failure to award him any damages, analysis of his theory shows that the issue is a legal one: did the breach of the non-disclosure agreement automatically entitle him to recover the amount Galt received from the sale of its products involving the confidential information? Indeed, because Junker did not move for JMOL that if the jury found a breach, he was entitled to such an award, it is doubtful whether he now may challenge the evidentiary support for the jury's verdict. See Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1281 (Fed. Cir. 2000) ("[A] party's failure to make a motion

for JMOL, <u>see</u> <u>Fed. R. Civ. P. 50(b)</u>, at any phase of the litigation precludes an appellate court from reviewing the sufficiency of the evidence underlying the jury verdict." (citing <u>Biodex Corp v. Loredan Biomed. Inc.</u>, 946 F.2d 850, 862 (Fed. Cir. 1991) and <u>Jurgens v. McKasy</u>, 927 F.2d 1552, 1557 (Fed. Cir. 1991))).

The only theory upon which Junker could recover such damages is that if the non-disclosure agreement had not been breached, he, and not Galt, would have manufactured and sold the product. There is no evidence in the record, however, that would support that theory. Moreover, any such damages would be limited to whatever profit Junker could have realized from his activities; he certainly could not recover the total sales Galt made. The district court correctly instructed that the jury "should not award compensatory damages for speculative injuries, but only for those injuries that the wronged party has actually suffered." (J.A. at 16.) As the Texas courts hold, "[t]he proper measure of recovery for a breach of contract claim is the loss or damage actually sustained." <u>Valley Nissan, Inc. v. Davila</u>, 133 S.W.3d 702, 713-14 (Tex. App. 2003) (citing <u>Stewart v. Basey</u>, 245 S.W.2d 484, 486 (Tex. 1952)). The jury properly refused to award the damages Junker seeks for breach of a contract, because he had not shown that the breach caused him actual damage.

Junker relies on the statement in <u>University Computing Co. v. Lykes-Youngstown Corp.</u>, 504 F.2d 518 (5th Cir. 1974), that "the 'appropriate measure of damages, by analogy to patent infringement, is not what plaintiff lost, but rather the benefits, profits, or advantages gained by the defendant in the use of the trade secret.'" <u>Id.</u> at 536 (internal citation omitted). That case, however, involved damages not for breach of

contract, but for misappropriation of a trade secret, which involves a different basis for determining damages. See id. at 535-36.

Furthermore, the dollar amount that Junker now seeks as damages for breach of contract is identical to the dollar amount the jury awarded him for infringement. Both claims arose out of the same set of operative facts regarding Galt's unauthorized use of the design Junker had developed. The circumstances at least suggest that awarding Junker the damages he seeks on his breach-of-contract claim would constitute a double recovery. See Bowers v. Baystate Techs., Inc., 320 F.3d 1317, 1327-28 (Fed. Cir. 2003) (affirming denial of copyright infringement damages that arose from same lost sales as breach of contract damages); Celeritas Techs., Ltd. v. Rockwell Int'l Corp., 150 F.3d 1354, 1362 (Fed. Cir. 1998) (discussing need to avoid duplicative damages where patent infringement, breach of contract, and misappropriation causes of action arose from same set of operative facts).

## CONCLUSION

Paragraph 9 of the amended judgment, awarding Junker attorney fees of $275,000, is vacated and the attorney fee issue is remanded to the district court for further proceedings in accordance with this opinion. The other portions of the amended judgment and the district court's rulings challenged on this appeal are affirmed.

AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED.

## COSTS

No costs.