

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-13-2008

# Beazer East Inc v. Mead Corp

Precedential or Non-Precedential: Precedential

Docket No. 06-4993

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Beazer East Inc v. Mead Corp" (2008). *2008 Decisions.* Paper 1094.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1094

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-4993
_____

BEAZER EAST, INC.

v.

THE MEAD CORPORATION,
                                    Appellant

v.

KOPPERS INDUSTRIES, INC.,
                                    Third Party Defendant

_____

APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 91-cv-00408)
District Judge:  Honorable Gustave Diamond

Argued November 2, 2007
Before:  RENDELL, WEIS
and NYGAARD, Circuit Judges.

(Filed: May 13, 2008)

DALE E. STEPHENSON, ESQUIRE (ARGUED)
J. Van Carson, Esquire
Allen A. Kacenjar, Esquire
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower, 127 Public Square
Cleveland, Ohio  44114-1304

David E. White, Esquire
Thorp, Reed & Armstrong
One Oxford Center, 14th floor
301 Grant Street
Pittsburgh, PA  15219

Attorneys for Appellant The Mead Corporation


D. MATTHEW JAMESON, III, ESQUIRE (ARGUED)
Mark D. Shepard, Esquire
Babst, Calland, Clements & Zomnir, P.C.
Two Gateway Center, 8th floor
Pittsburgh, PA  15222

Attorneys for Appellee Beazer East, Inc.


John E. Frey, Esquire
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive, Suite 2800
Chicago, Il 60606

Attorney for Appellee Koppers Industries, Inc.

_____

OPINION
_____

WEIS, Circuit Judge.

This is the third appeal in this long-running contribution claim under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), Pub. L. No. 96-510, 94 Stat. 2767. After the second appeal was decided, defendant Mead moved for judgment for failure to state a claim or for lack of subject-matter jurisdiction. The District Court denied the motions, but certified a controlling question of law under 28 U.S.C. § 1292(b) raising the issue of whether the effect of Cooper Indus. v. Aviall Servs., Inc., 543 U.S. 157 (2004), is to deny subject-matter jurisdiction over plaintiff Beazer's contribution claims under § 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1).[1] Also implicated is the denial of Mead's motion to dismiss for failure to state a claim under § 113(f)(1).

We conclude that the District Court has subject-matter jurisdiction. We will also affirm the denial of the motion for judgment on the pleadings and will remand for further proceedings.

_____

[1]In general, § 113(f)(1) permits contribution from others who are responsible under CERCLA for cleanup of contaminated sites. That section is discussed in more detail infra.

3

I.

We will summarize the progress of this litigation to the extent that it is pertinent to the pending appeal. Beazer's predecessor in title purchased property previously owned by Mead. After federal and state investigations revealed the existence of hazardous wastes at the site, Beazer entered into a 1991 Administrative Order on Consent with the United States Environmental Protection Agency under the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6901 et seq. After Mead declined to participate in the investigation and cleanup of the site, Beazer began a lengthy and continuing remediation process.

In early 1991, Beazer filed a complaint against Mead seeking contribution for investigation and cleanup costs under §§ 107(a)[2] and 113(f)(1) of CERCLA, 42 U.S.C. §§ 9607(a), 9613(f)(1), as well as asserting various state and common law claims. Mead counterclaimed based on an indemnity provision in the original purchase agreement.

The District Court granted summary judgment to Mead, but on appeal we reversed, holding that the purchase agreement did not require indemnification. Beazer East, Inc. v. Mead Corp., 34 F.3d 206, 208 (3d Cir. 1994) (Beazer I). The case was remanded so that the District Court could "consider both parties'

---

[2]In broad terms, § 107 provides for recovery from responsible parties for expenses incurred in cleaning up contaminated sites. It is discussed infra.

4

contribution claims, and determine the proper apportionment of CERCLA liability." Id. at 209.

On remand, Mead argued, *inter alia*, that Beazer could not recover most of its costs under § 113(f)(1) because they were incurred under the RCRA[3] rather than CERCLA. Moreover, the costs could not be obtained under § 107(a) because they were not voluntarily incurred.

In 1996, the District Court determined that Beazer's §§ 107 and 113(f) claims were duplicative. It dismissed the § 107 claim, stating, "Beazer has failed to identify any additional bases for recovery or damages under a § 9706 [§ 107] claim which would not be included in a final allocation of the parties' contribution claims under § 9613(f) [§ 113(f)]."[4]

The District Court also concluded, "[t]o the extent that the motion seeks to preclude Beazer from advancing its § [113(f)] action on the bases that Beazer's response costs were incurred on a voluntary nature or were incurred under the Resource Conservation Recovery Act, 42 U.S.C. § 6901 et seq., the motion is likewise denied."

---

[3]The 1991 Administrative Order on Consent was entered into under § 3008(h) of the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6928(h).

[4]The reference to § 9706 is apparently a typographical error. Section 107 of CERCLA is codified at 42 U.S.C. § 9607.

5

The Court then referred the case to a magistrate judge to allocate costs between Mead and Beazer. At that time, neither of the parties sought reconsideration of the District Court's rulings on the viability of the § 107 and § 113(f)(1) claims.

After conclusion of the magistrate's allocation proceedings, the district judge modified the magistrate's recommendations and, following a bench trial, assessed Mead with 67.5% and Beazer with 32.5% liability. In August 2002, the Court entered judgment against Mead in the amount of $3,243,467.80 plus interest. The Court also entered a declaratory judgment in October 2002 requiring Mead to pay 67.5% of Beazer's continuing costs.

Mead appealed, contending that in the absence of its consent the magistrate judge lacked authority to conduct a fact-finding trial. Mead did not challenge its liability for contribution under §113(f)(1), nor did Beazer discuss whether it had a claim for contribution under §107.

In June 2005, this Court decided that the magistrate judge lacked authority to conduct the allocation proceeding. Beazer East, Inc. v. Mead Corp., 412 F.3d 429, 432 (3d Cir. 2005) (Beazer II). We remanded "for a new equitable allocation proceeding before the District Judge," id., and commented on factors to be considered in the apportionment, but made no ruling on the liability of the parties. Id. at 445-49.

In December 2004, after Beazer II was argued, the Supreme Court decided Cooper. Essentially, that case held that a party "who has not been sued under § 106 or § 107(a) . . .

6

[cannot] obtain contribution under § 113(f)(1) from other liable parties."  543 U.S. at 161.

In June 2005, we filed the opinion in Beazer II and returned the case to the District Court.  Six months later, in January 2006, Mead filed a motion for judgment on the pleadings, asserting that Beazer could not maintain its claim for contribution pursuant to § 113(f)(1) because of the Cooper decision.  In a later filing, Mead argued that Cooper deprived the District Court of subject-matter jurisdiction because Beazer had not been sued under § 106 or § 107.

The District Court denied the motion, ruling that the requirement for a suit under § 106 or § 107 was an element of a claim for relief under § 113(f)(1) and not a jurisdictional threshold.  The Court also noted that Mead had waived its non-jurisdictional defense to the § 113(f)(1) claim by failing to raise the issue on its appeal in Beazer II.

Mead then filed this interlocutory appeal.  After it was docketed and the briefs were filed, but before oral argument, the Supreme Court decided United States v. Atlantic Research Corp., 127 S. Ct. 2331 (June 11, 2007), holding that a "potentially responsible party" (PRP) may recover against another PRP for cleanup costs under § 107(a).[5]  Id. at 2334.

_____

[5]We use "the term 'potentially responsible party' or 'PRP' to refer to those parties that potentially bear some liability for contaminating a site" under CERCLA.  E.I. DuPont de Nemours & Co. v. United States, 508 F.3d 126, 128 n.2 (3d Cir.

7

II.

CERCLA is a strict liability statute granting the President broad authority to compel private parties and governmental bodies to clean up contaminated sites and to require "everyone who is potentially responsible for hazardous-waste contamination . . . [to] contribute to the costs of cleanup." United States v. Bestfoods, 524 U.S. 51, 56 n.1 (1998) (emphasis and quotation omitted). As originally enacted, the statute provided for recovery under § 107, which listed four categories of parties, including current and past owners of a facility, who were potentially responsible for cleanup costs. See 42 U.S.C. § 9607(a).

Section 107 provided that PRPs were liable for costs incurred by the federal and state governments, 42 U.S.C. § 9607(a)(4)(A), as well as for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). Section 107, however, proved to be an inadequate means for allocating cleanup costs among the various PRPs. Disputes arose over whether a private party that voluntarily incurred cleanup expenses or had been sued by other PRPs could recover from other PRPs.

Litigation about the scope of § 107 ultimately led Congress to amend CERCLA by adding § 113(f) to provide a right to contribution. See Superfund Amendments and

2007).

8

Reauthorization Act of 1986 (SARA), Pub. L. No. 99-499, 100 Stat. 1613. Under § 113(f)(1), "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 107(a), during or following any civil actions under section 106 of this title or under section 107(a)." 42 U.S.C. § 9613(f)(1). Further, "[i]n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." Id.[6]

Section 113, however, raised questions over the interplay between § 113(f) and § 107(a). See, e.g., Atlantic Research, 127 S. Ct. at 2334. Courts struggled to determine whether § 113(f)(1) allowed a PRP to seek contribution from other PRPs for voluntary cleanup costs and whether it could maintain a cost-recovery action under § 107 for joint and several liability against other PRPs. See E.I. DuPont de Nemours & Co. v. United States, 508 F.3d 126, 132-33 (3d Cir. 2007).

In 2004, the Supreme Court held that "a private party who has not been sued under § 106 or § 107(a) may [not] . . . obtain contribution under § 113(f)(1) from other liable parties." Cooper, 543 U.S. at 161. The Court, however, did not decide whether a PRP may "pursue a § 107(a) action against other PRPs for joint and several liability," id. at 169, and whether a

---

[6]The statute of limitations under § 107 differs from that under § 113, but that factor is not material in this case. See 42 U.S.C. § 9613(g).

9

PRP has an "implied right to contribution under § 107." Id. at 170.

Atlantic Research answered the question left open by Cooper, holding that "the plain language of [§ 107(a)(4)] subparagraph (B) authorizes cost-recovery actions by any private party, including PRPs." 127 S. Ct. at 2336. The Court described the interplay between § 107(a) and § 113(f)(1) as follows: "Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs." Id. at 2338.

## III.

Mead contends that because the § 107 claim was dismissed in 1996 by the District Court, Beazer's only remaining means of recovery is under § 113(f)(1), a claim that is fatally flawed in light of Cooper. Mead argues that because Beazer has not "been sued under § 106 or § 107(a) . . . [it may not] obtain contribution under § 113(f)(1) from other liable parties." Cooper, 543 U.S. at 161.

According to Mead, the failure to meet the "civil action" requirement deprives the District Court of subject-matter jurisdiction. Disagreeing, the District Court described the "civil action" requirement as "an element of a claim for relief under §113(f)(1), not a jurisdictional threshold."

10

Mead contends on appeal that the requirement is jurisdictional because it constitutes the primary foundation for all §113(f)(1) contribution claims. Further, Mead argues that, even if the District Court was correct, Cooper destroyed jurisdiction because the claim is now so "completely devoid of merit as not to involve a federal controversy." Kulick v. Pocono Downs Racing Ass'n, 816 F.2d 895, 899 (3d Cir. 1987) (quotation omitted).

A.

We turn first to the contention that the "civil action" requirement in § 113(f)(1) is jurisdictional. Mead's approach is an example of the loose use of the term "jurisdiction," an error that has frequently been present in judicial opinions. See Arbaugh v. Y&H Corp., 546 U.S. 500, 511 (2006). The terminology has been often used incorrectly when litigation has been dismissed on the merits in situations where the courts clearly had the power to adjudicate the disputes. Id. Arbaugh discussed the confusion caused by the profligate use of "jurisdiction," id. at 510-11, observing that "jurisdiction" is a word of "many, too many meanings." Id. at 510 (quotation omitted). Characterizing some dispositions as "drive-by jurisdictional rulings," id. at 511 (internal quotation marks omitted), the Court cautioned that they "should be accorded 'no precedential effect'" on a court's authority. Id. (citation omitted).[7]

_____

[7]The Supreme Court noted that the distinction was important because mislabeling a requirement as jurisdictional

11

Arbaugh held that the employee-numerosity prerequisite for Title VII discrimination proceedings was an element of the claim and not a test for subject matter-jurisdiction because the requirement related to "the substantive adequacy" of the claim. Id. at 504. In reaching its conclusion, the Court set out a "readily administrable bright line" test for determining if a statutory limitation is jurisdictional:

> "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."

---

had serious consequences. Arbaugh v. Y & H Corp., 546 U.S. 500, 513-14 (2006). Unlike an element of a claim, subject-matter jurisdiction "can never be forfeited or waived" and courts have a continuing "independent obligation to determine whether subject-matter jurisdiction exists." Id. at 514 (quotation omitted). Also, trial judges may evaluate evidence relating to subject-matter jurisdiction, but only a jury can assess facts relating to an element of a claim. Id. Finally, a lack of subject-matter jurisdiction means that the entire complaint must be dismissed, whereas "when a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction . . . over pendent state-law claims." Id.

12

Id. at 515-16 (internal citation omitted).

Applying the Arbaugh standard in the case before us demonstrates that the requirement that a § 113(f)(1) plaintiff must have been sued under § 106 or § 107(a) is an element of the claim. Failure to meet that requirement does not deprive the court of jurisdiction to decide the validity of the § 113(f)(1) claim.

Mead has not pointed to any language in § 113(f)(1) to show that Congress clearly stated that the requirement should "count as jurisdictional." If Congress intended that result, it could have explicitly said so.[8] See Arbaugh, 546 U.S. at 515.

We are persuaded that the "civil action" requirement in § 113(f) is an element of the claim.[9] See GenCorp, Inc. v. Olin

---

[8]The absence of a reference to § 113(f) in § 113(b), 42 U.S.C. § 9613(b), CERCLA's jurisdictional provision, is notable because that provision expressly subjects its grant of jurisdiction to subsections (a) and (h) of § 113.

42 U.S.C. § 9613(b) [§ 113(b)] reads, "Except as provided in subsections (a) and (h) of this section, the United States district courts shall have exclusive original jurisdiction over all controversies arising under this Act, without regard to the citizenship of the parties or the amount in controversy."

[9]Mead cites two Federal Circuit cases that found that statutes of limitations were jurisdictional in cases against the United States Government. See John R. Sand & Gravel Co. v.

13

Corp., 477 F.3d 368, 376 (6th Cir. 2007) (The "civil action" requirement is not jurisdictional because there is "no indication that Congress perceived this requirement as jurisdictional in nature.").

B.

Mead also argues that the District Court lacks subject matter jurisdiction because Beazer's §113(f)(1) claim has been made insubstantial by the Cooper decision.

The "legal insufficiency of a federal claim generally does not eliminate the subject matter jurisdiction of a federal court." Growth Horizons, Inc. v. Delaware County, 983 F.2d 1277, 1280 (3d Cir. 1993). In Bell v. Hood, 327 U.S. 678 (1946), however, the Supreme Court observed that the rule did not apply "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Id. at 682-83; see also Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666 (1974) (Dismissal for lack of subject-matter jurisdiction is

United States, 457 F.3d 1345, 1351 (Fed. Cir. 2006), aff'd, 128 S. Ct. 750 (2008); Fed. Nat'l Mortg. Ass'n v. United States, 469 F.3d 968, 972 (Fed. Cir. 2006). Those two opinions are inapposite because they relied on the unique nature of suits against the United States and concluded that the statutes were conditions on the United States' consent to suit.

14

appropriate if a claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.").

Mead's argument rests on the assumption that Beazer's § 113(f)(1) claim cannot possibly satisfy the "civil action" requirement. However, the Supreme Court apparently left open the question of whether a CERCLA administrative order can qualify as a "civil action" when it stated in Cooper that "we need not decide whether . . . [an administrative order under § 106] would qualify as a 'civil action.'" 543 U.S. at 168 n.5. Beazer argues that the RCRA order is the functional equivalent of one under CERCLA and would qualify as a "civil action." We need not address the merits of Beazer's argument, but observe that its § 113(f)(1) claim does not enter the realm of the "wholly insubstantial and frivolous."

In answer to the certified question of law, we hold that the District Court retained its original jurisdiction to adjudicate the issues in this case.

IV.

Although the certified question is a narrow one, we may address other issues that are fairly set forth in the record and which ultimately affect the outcome of the litigation. Ferrostaal, Inc. v. M/V Sea Phoenix, 447 F.3d 212, 216 (3d Cir. 2006) (a certified order under 28 U.S.C. § 1292(b) extends to all issues fairly included in the underlying order); NVE Inc. v. Dep't of Health & Human Servs., 436 F.3d 182, 196 (3d Cir. 2006). It

15

would be a waste of judicial resources to delay resolution of the pertinent issues in this already lengthy litigation. We will therefore address the contention that the District Court erred in denying dismissal for failure to state a claim.

Mead argues that Beazer's § 113(f)(1) claim fails because it does not meet the requisite "during or following any civil action" requirement discussed in Cooper. The District Court concluded that Mead waived this objection by failing to raise it during its second appeal in Beazer II. Mead now contends that it did not waive its objection because the District Court did not finally rule on that point in the July 1996 order prior to Beazer II and, therefore, the objection is still pending.

In its memorandum in support of its motion for partial summary judgment, Mead had argued that "[n]othing in section 113(f) authorizes Beazer to seek contribution for costs incurred under other statutory schemes, such as RCRA. On the contrary, section 113(f) only covers persons facing liability under sections 106 or 107." The District Court rejected that argument, stating that "[t]o the extent that the motion seeks to preclude Beazer from advancing its § 9613(f) action on the bases that Beazer's response costs were incurred on a voluntary nature or were incurred under the Resource Conservation Recovery Act, 42 U.S.C. § 6901 et seq., the motion is likewise denied."

The District Court's order was explicit, but not immediately appealable because it was a denial of a motion for summary judgment. Boeing Co. v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers, 370 F.2d 969, 970 (3d Cir. 1967). The 1996 denial of Mead's motion based on the

16

"civil action" prerequisite became final and appealable in 2002 when the District Court ordered judgments in Beazer's favor for $3,243,467.80 and continuing costs.

In the opinion accompanying the August 2002 order, the District Court stated that the relevant issue was "which of Beazer's specifically claimed environmental costs . . . are recoverable in a contribution action under 42 U.S.C. § 9613(f) [§ 113(f)]." In October 2002, the District Court issued an order incorporating its prior rulings and declared that Mead was "liable to plaintiff . . . for 67.5% of all of Beazer's necessary response costs."

The 2002 judgments were based on a finding that Mead was liable under § 113(f)(1). Mead's current objections to the § 113(f)(1) claim had been rejected at that point and should have been presented in its direct appeal in Beazer II. See United States v. Pultrone, 241 F.3d 306, 307 (3d Cir. 2001) (holding that a defendant could not challenge his conviction in a second direct appeal after a remand for resentencing when he failed to raise the issue in the first direct appeal); United States v. Husband, 312 F.3d 247, 250 (7th Cir. 2002) ("any issue that could have been but was not raised on appeal is waived and thus not remanded"); Omni Outdoor Adver., Inc. v. Columbia Outdoor Adver., Inc., 974 F.2d 502, 505 (4th Cir. 1992) (same); Nw. Ind. Tel. Co. v. FCC, 872 F.2d 465, 470 (D.C. Cir. 1989) ("It is elementary that where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand.").

17

The brief filed by Mead in <u>Beazer II</u> clearly indicates the limited scope of the issues raised in that appeal.[10]

---

[10]In its brief on appeal in <u>Beazer II</u>, Mead listed the issues as:

> "1. Whether the district court, in the absence of consent of a party, has the authority to delegate jurisdiction to a Magistrate to conduct an evidentiary, fact-finding trial and issue preliminary factual findings and conclusions of law on the issue of the allocation of liability among the parties in a CERCLA contribution action. . . .
> 2. Whether the district court erroneously equated CERCLA's 'polluter pays' principle with a Congressional mandate to consider 'volume of wastes' as the primary equitable allocation factor. . . .
> 3. Whether the district court erroneously failed to give appropriate weight in allocating liability between Beazer and Mead to its finding that the parties intended the 1974 Purchase Agreement to shift to Beazer all of the environmental liability at the Site. . . .
> 4. Whether the district court erred in finding Mead responsible for 'approximately 90% of the waste on the site' when the facts indicate this conclusion was based on inaccurate and inconsistent information and assumptions. . . .

Mead cannot now, after a remand on an unrelated issue, raise objections that it previously waived.

An exception to normal law of the case and waiver rules is recognized when an intervening decision from a superior court changes the controlling law.  See Zichy v. City of Philadelphia, 590 F.2d 503, 508 (3d Cir. 1979); Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 170 (3d Cir. 1982).  We have invoked that theory to allow a party to raise an issue for the first time on direct review where a Supreme Court decision intervened between a district court ruling and our appeal.  See, e.g., E.I. DuPont de Nemours & Co., 508 F.3d at 136 n.6 (considering plaintiff's claims despite an earlier voluntary dismissal because they had taken on new importance after the intervening decision in  Cooper); see also Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 543 (1941).  We have also applied this rule where a controlling Supreme Court decision intervened between two appeals.  See, e.g., Zichy, 590 F.2d at 508.

---

5. Whether the Court erred in entering a declaratory judgment which fixes Mead's allocation of liability into the future and provides no mechanism for challenges to that allocation based on changed facts or circumstances. . . ."

19

Those situations are not present here. Cooper was issued about six months before our decision in Beazer II.[11] Aware of the Cooper opinion, Mead made no effort to bring it to this Court's attention before the filing of Beazer II. Mead now seeks to excuse its inaction by arguing that it was not permitted or required under Fed. R. App. P. 28(j) to notify the Court because Cooper did not affect an issue raised in its Beazer II brief.

It is true that "absent extraordinary circumstances, briefs must contain statements of all issues presented for appeal, together with supporting arguments and citations." Simmons v. City of Philadelphia, 947 F.2d 1042, 1065 (3d Cir. 1991) (Becker, J., announcing judgment of the court) (referring to Fed. R. App. P. 28(a)(1)-(3)).

Parties cannot normally use Rule 28(j) letters to present additional arguments. See United States v. Khorozian, 333 F.3d 498, 506 n.7 (3d Cir. 2003) (Rule 28(j) letter cannot be used to raise supplemental argument); Valdez v. Mercy Hosp., 961 F.2d 1401, 1404 (8th Cir. 1992) (Rule 28(j) letter cannot be used to raise a new issue that should have been raised earlier).

Here, however, the intervening Cooper decision was the kind of extraordinary circumstance where knowledge of that opinion would be of substantial assistance to this Court's

---

[11]After the appeal was filed in Beazer II, the case was entered into the Court's Appellate Mediation Program. One of the issues before the Beazer II panel was the validity of an oral settlement allegedly reached during the mediation.

20

deliberations. <u>Beazer II</u> involved a determination of the proper method of carrying out an allocation proceeding that rested on the conclusion that a § 113(f)(1) action was permissible. <u>Cooper</u> was clearly relevant to that decision.

Mead cites no case in this Court adopting an unduly narrow construction of Rule 28(j) or a rigid limitation on our discretion to consider relevant new law. In any event, Mead could have requested an opportunity to submit additional briefing based on <u>Cooper</u>. <u>See</u> <u>United States v. Vazquez-Rivera</u>, 407 F.3d 476, 487 (1st Cir. 2005) (intervening change in law is an exceptional circumstance under which a party may submit supplemental briefing on an issue that was not raised in its opening brief); <u>DSC Commc'ns Corp. v. Next Level Commc'ns</u>, 107 F.3d 322, 326 n.2 (5th Cir. 1997) (party that waived an issue by failing to include it in its opening brief could raise the issue in a supplemental brief based on an intervening change of law).[12]

The combination of the initial failure to raise the "civil action" objection in the briefs and subsequent failure to advise

_____

[12]Moreover, Mead did not attempt to file a Motion for Summary Action. <u>See</u> Third Circuit Local Appellate Rule 27.4; Third Circuit Internal Operating Procedure 10.6 ("The court . . . upon motion by a party, may take summary action . . . if it clearly appears that no substantial question is presented or that subsequent precedent or a change in circumstances warrants such action.").

21

this Court of the <u>Cooper</u> opinion before <u>Beazer II</u> was decided precludes Mead from invoking the intervening law exception.

We do not lightly invoke waiver, but as the Supreme Court has cautioned, "[t]here must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." <u>Ackermann v. United States</u>, 340 U.S. 193, 198 (1950). This case has been ongoing since 1991. Mead's liability under § 113(f)(1) was established by the time of the District Court's orders in 2002 – well before this Court's June 23, 2005, opinion in <u>Beazer II</u>. Allowing Mead to renew its argument at this late point in the litigation would seriously impair the finality of the rulings of this Court and the District Court. Mead must live by its long-standing and considered decision not to pursue its § 113(f) objection.

We agree with the District Court that Mead waived its challenge to the applicability of § 113(f)(1) and the Court has subject-matter jurisdiction. Accordingly, we again remand this case to the District Court to hold an equitable allocation proceeding in accordance with <u>Beazer II</u>.

22